HASSETT & HODGE *vs.* JOHN J. COOPER.

PROVIDENCE—JULY 2, 1898.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

The construction put upon a contract by the parties thereto will not vary its terms when these are clear and explicit; but when the contract is ambiguous

such construction may be resorted to in ascertaining the intent of the parties when making it.

C. was the consignee of goods from H. H., under an agreement to pay charges for shipping, storing, and insuring them, and authorizing him to sell the same for the consignors and hold the proceeds to their use, but providing that the title to the property should remain in the consignors until sale thereof approved by them; C. sold certain of the goods without obtaining such approval, received the money therefor, and did not pay it over to the consignors; the evidence showed prior sales without such approval which were recognized by the consignors, and did not show any sale in which the approval had been obtained:—

*Held*, that the agreement was, in the main, an ordinary contract between consignor and consignee for the purpose of effecting sales of the consigned property, the consignor retaining title until the sales were made.

*Held*, further, that the agreement, all its provisions being considered together, did not require the approval of the consignors before a sale could be effected.

*Quære*, whether the consignee would not be guilty of a conversion of the property if, before the sale, he had formed the intention of appropriating the proceeds to his own use ? And, *quære*, whether a sale under such circumstances should not be held to be outside of the agreement, and, therefore, fraudulent as against the consignors ?

TROVER, upon facts fully stated in the opinion. Heard on defendant's petition for a new trial.

TILLINGHAST, J. This is an action of trover, and is brought to recover the value of three wagons which, as the declaration alleges, the defendant wrongfully converted to his own use. At the trial of the case in the Common Pleas Division the jury found in favor of the plaintiffs, and the case is now before us on the defendant's petition for a new trial on the ground that certain rulings of the presiding justice were erroneous.

The testimony shows that on the first day of May, 1896, the plaintiffs and defendant, who for some time previous thereto had been dealing with each other in the consignment and sale of wagons, entered into a written agreement which was to govern all their future transactions and, as the jury found, to apply to all wagons in the possession of the defendant at the time of the execution of said agreement. The following is a copy of said agreement:

" This Memorandum of Agreement, made and entered into this first day of May, A. D. 1896, by and between James H.

Hassett, John Hassett and George E. Hodge, all of Ames-bury, in the county of Essex and Commonwealth of Massa-chusetts, copartners as Hassett & Hodge, of said Amesbury, parties of the first part, and John·J. Cooper, of the city and county of Providence, in the State of Rhode Island and Prov-idence Plantations, party of the second part,

Witnesseth: First.   That the relation of consignor and consignee is hereby created and established between the par-ties hereto upon the following terms and conditions, viz.:

Second.   Said Hassett & Hodge are to ship on consign-ment- account to said Cooper such carriages and other goods as the latter may from time to time desire.

Third.   All freight and transportation charges and all packing and boxing expenses on the same are to be paid by said Cooper.

Fourth.   Said goods are to be stored and properly cared for by said Cooper and at his expense, for account of said Hassett & Hodge.

Fifth.   Said Cooper is to sell said carriages and other goods for account of said consignors, and account to them or their authorized agent, at the invoiced value specified in each shipment without deduction therefrom or expense of any kind by said consignors.

Sixth.   All said carriages and other goods shall continue to be the property of said Hassett & Hodge at all times until sale is made and approved by them, and the said Cooper shall keep all the same at all times insured at his expense in the name and for the benefit of Hassett & Hodge, to whom all policies shall be made payable, and shall be at once delivered as and when issued thereon.

Seventh.   Said Cooper shall give to said Hassett & Hodge any and all information desired by them at any time respect-ing any of said carriages, or other goods, and shall at once notify said Hassett & Hodge whenever any sale is made, stating the terms thereof.   The proceeds of every such sale, whether in money, notes, credits, or property, shall be the property of said Hassett & Hodge and to be held by said Cooper to their use and subject to their order.

Eighth. For the greater security of the said Hassett & Hodge the said Cooper shall give to said Hassett & Hodge, whenever requested, any property, or any note or notes for the invoice value of any of said goods which the said Hassett & Hodge may desire therefor, or for such portion of said value as may at any time be unaccounted for, the taking of any property or note, or the discount of any such note, however, not being deemed to be payment for said carriages or other goods, or as changing the rights of the consignors under the prior provisions of this agreement.

In testimony whereof the parties above named have hereunto interchangeably set their hands and seals in duplicate, the day and year first above written.

>                    JAMES H. HASSETT    [L. S.]
>                    GEO. E. HODGE       [L. S.]
>                    JOHN HASSETT        [L. S.]
>                         Parties of the first part.
>                    J. J. COOPER        [L. S.]
>                         Party of the second part."

It is conceded that the wagons in question were originally the property of the plaintiffs, and that they were delivered to the defendant for sale under said agreement. It is also conceded that the defendant sold said wagons and received the money therefor, that he has not paid over the same to the plaintiffs, and that he did not obtain the approval of the plaintiffs for the sale of said wagons. The testimony shows that the defendant had the three wagons in question in his possession after the execution of the above agreement, and, previous to the time of the demand, sold them all for a cash price higher than the cost of the same.

The court ruled and charged the jury that the defendant had no authority to sell the wagons in question, under said written agreement, without first getting the approval of the plaintiffs, and that by selling the same without first obtaining such approval he was guilty of trover and conversion, as charged in the declaration. The defendant duly excepted,

and the only question which we need to consider is whether the ruling was correct.

The contention of the plaintiffs is that the ruling was correct because the sixth clause of said agreement provides that "all said carriages . . . . shall continue to be the property of said Hassett & Hodge at all times until sale is made and approved by them." The defendant's contention, on the other hand, is that under any reasonable construction of said agreement, taken as a whole, and also taken in connection with the course of dealing thereunder between the plaintiffs and defendant, the latter had the right to sell said carriages in the way that he did, and that the only action which would arise from such a sale would be one for the money so received by the defendant.

With regard to the course of dealing between the parties above referred to; it is proper here to state that the defendant made repeated sales of carriages, under said agreement, without obtaining the approval of the plaintiffs for such sales, and that they recognized his right so to do by receiving the proceeds of the sales, both in notes and money, without objection. And, moreover, it nowhere appears in the testimony that the defendant in any case obtained the approval of the plaintiffs before making a sale. Mr. Hassett, one of the plaintiffs, testifies that "Under the terms of that agreement I was notified of a sale by getting a check from Mr. Cooper." He also testifies that "We accepted a note from a man named White, in Providence, with Cooper's endorsement . . . . in payment for one of the carriages we shipped to him. Q.—After a sale by Mr. Cooper, the method of dealing between you was that he should send you a check for the amount of your bill? A.—That is the way he did deal with us. Q.—Did you ever object to that? A.—We never did."

It thus appears that the construction put upon said contract by the parties themselves was in accordance with the defendant's contention, *i. e.*, that he had the right to sell the carriages without first obtaining the approval of plaintiffs. And while it is true that the construction thus put

upon a contract will not vary its terms when they are clear and explicit, yet where it is ambiguous such construction may be resorted to to ascertain the true intent of the parties in making the same.    Beach on Mod. Law of Contracts, vol. 1, §§ 720–2.

But independently of the way in which the contract in question was treated by the parties, we think the fair and reasonable construction to be put thereon is that contended for by the defendant.    It is in the main an ordinary contract between a consignor and consignee.    Its object, on the part of the consignors was to effect a sale of their goods, they retaining the title therein until the sale should be made. And while under the *sixth* provision of the contract, if taken by itself, it might seem that each sale required the approval of the consignors, yet, when taken, as it must be, in connection with the other provisions, we think it is quite clear that no such approval was necessary.    Under the *seventh* provision of said contract the defendant is required to notify the plaintiffs, "*whenever any sale is made, stating the terms thereof.*"    This language clearly shows that the defendant was not called upon to obtain the plaintiffs' approval of a sale in advance of the making thereof, but that he was simply to *report* the sale, stating the terms upon which it had been made.    For if a sale, or, to be exact, a proposed sale, in a given case must first be approved by the plaintiffs, there would be no sense in said requirement, as the plaintiffs would have all the information which the seventh article calls for, in advance of the actual sale.    Indeed, under such an arrangement the plaintiffs would practically be making the sale themselves instead of allowing the defendant to make it, as expressly authorized to do by section five of the agreement, thus leaving to the defendant the right to obtain an offer merely for the carriages.    Such a limitation upon the powers of a consignee of merchandise for sale is certainly very unusual, and would manifestly tend to prevent that promptness of action in effecting sales which is so very essential to the successful prosecution of mercantile affairs.    And hence we think the court should not adopt a construction

which would lead to such a result, unless it is pretty clear that such was the intent of the parties. Section five of the agreement provides that "Said Cooper is to sell said carriages . . . . for account of the consignors and account to them" therefor. This is very broad language. And if the consignors, who, it appears in evidence, drew up the contract to suit themselves, had intended to limit the power of the consignee to sell as thus conferred, we think they would either have expressly done so in this section, or else by some reference to the subsequent section where the word "approved" is used. The only object of the sixth section, we think, taken in connection with the rest of the agreement, was to have it distinctly understood that the title to the carriages was to remain in the consignors until a sale was effected by the consignee, and that while the carriages remained in his possession they were to be insured and cared for strictly as their property.

Having come to the conclusion, then, that the defendant had the right to sell the carriages in question, it necessarily follows that in selling them he was not guilty of the conversion thereof, except, at any rate, as hereinafter suggested; and, hence, that the ruling of the court that he was cannot be sustained. Whether, in case it shall be shown that the defendant formed the intention of appropriating the proceeds of the sale of said carriages to his own use, before effecting said sale, this would render him guilty of the conversion of the carriages, we are not now called upon to decide. *Quære,* however, whether a sale under such circumstances should not be held to be entirely outside of the contract aforesaid, and hence fraudulent as against the rights of the consignors. See 26 Amer. & Eng. Ency. of Law, 782–3, and cases in note 1; *Swift* v. *Rounds,* 19 R. I. 527.

The verdict is set aside and a new trial granted. Case remitted to the Common Pleas Division for further proceedings.

*John T. Blodgett,* for plaintiffs.

*J. Jerome Hahn,* for defendant.